1                UNITED STATES DISTRICT COURT
2                DISTRICT OF PUERTO RICO

3 JORGE MIRANDA-BONILLA,

4      Claimant,                            Civil No. 11-1861 (JAF)

5      v.

6 MICHAEL J. ASTRUE,
7 Commissioner of Social Security,
8
9      Defendant.

10

11                     **OPINION AND ORDER**

12      Claimant petitions this court under 42 U.S.C. § 405(g) to review the decision of

13 Defendant, the Commissioner of Social Security ("Commissioner"), denying Claimant's

14 application for disability benefits.  (Docket No. 1.)  Commissioner files a memorandum

15 defending the denial (Docket No. 8), and Claimant files a memorandum challenging it

16 (Docket No. 9).

17                          **I.**

18                     **Background**

19      We derive the following facts from the parties' filings and the transcript of the record

20 in this case ("R.").  Claimant was born on Feb 3, 1970.  (R. at 29.)  Claimant has worked as

21 welder and guard. (R. at 471-72.)

22      Claimant alleges that he has suffered from back pain and depression, beginning on

23 August 1, 2003.  (R. at 22.)  Claimant has not engaged in substantial gainful activity since

24 his alleged onset date.  (R. at 17.)

Civil No. 11-1861 (JAF)                                                          -2-

1      On December 15, 2006, Claimant applied for Social Security disability benefits.

2    (R. at 29.)  He claimed that he was disabled under the Social Security Act, 42 U.S.C. §§ 416

3    and 423 (the "Act") on account of back pain and depression.  (R. at 23.)  Commissioner

4    denied his claim first on March 28, 2007, and again on reconsideration on February 20,

5    2008.  (R. at 45, 51.)  Claimant requested a hearing before an administrative law judge

6    ("ALJ"), which took place before ALJ Glenn Meyer, on May 26, 2009.  (R. at 470.)

7    Claimant waived his right to be present at the hearing, but was represented by counsel.  (Id.)

8    On June 30, 2009, the ALJ issued an favorable decision.  (R. at 24.)

9      In his decision, the ALJ found that Claimant was not disabled.  The ALJ found that

10   there were four jobs in the national economy that Claimant could have performed: Products

11   classifier, products inspector, products ticketer, and products packer.  (R. at 23.)  Claimant

12   requested review of the ALJ decision from the Appeals Council and, on July 8, 2011, the

13   Appeals Council denied the request. (R. at 5.)  On September 1, 2011, Claimant filed the

14   instant case for judicial review of Commissioner's decision.  (Docket No. 1.)

15                   **II.**

16         **<u>Standard for Review and Proceedings Below</u>**

17      An individual is disabled under the Act if he is unable to do his prior work or,

18   "considering [his] age, education, and work experience, engage in any other kind of

19   substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d).  The

20   Act provides that "[t]he findings of the Commissioner . . . as to any fact, if supported by

21   substantial evidence, shall be conclusive."  § 405(g).  Substantial evidence exists "if a

22   reasonable mind, reviewing the evidence in the record as a whole, could accept it as

1   adequate to support [the] conclusion." <u>Irlanda Ortiz v. Sec'y of Health & Human Servs.</u>,

2   955 F.2d 765, 769 (1st Cir. 1991) (quoting <u>Rodriguez v. Sec'y of Health & Human Servs.</u>,

3   647 F.2d 218, 222 (1st Cir. 1981)).   We must uphold Commissioner's decision if we

4   determine that substantial evidence supports the ALJ's findings, even if we would have

5   reached a different conclusion had we reviewed the evidence de novo.   <u>Lizotte v. Sec'y of</u>

6   <u>Health & Human Servs.</u>, 654 F.2d 127, 128 (1st Cir. 1981).

7          Our review is limited to determining whether the ALJ employed the proper legal

8   standards and focused facts upon the proper quantum of evidence.   <u>Manso-Pizarro v. Sec'y</u>

9   <u>of Health and Human Servs.</u>, 76 F.3d 15, 16 (1st Cir. 1981).   We reverse the ALJ if we find

10  that he derived his decision "by ignoring evidence, misapplying the law, or judging matters

11  entrusted to experts." <u>Nguyen v. Chater</u>, 172 F.3d 31, 35 (1st Cir. 1999).   In reviewing a

12  denial of benefits, the ALJ must have considered all evidence in the record.   20 C.F.R.

13  § 404.1520(a)(3).

14         The Act outlines a five-step inquiry to determine whether a claimant is disabled.

15  Step one focuses on the claimant's work activity; if claimant is "doing substantial gainful

16  activity," he will be found "not disabled." § 404.1520(a)(4).   Step two determines whether a

17  claimant's impairment(s) meet(s) the Act's severity and duration requirements.   <u>Id.</u>   A

18  claimant bears the burden of proof "at step one of showing that he is not working, [and] at

19  step two that he has a medically severe impairment or combination of impairments . . . ."

20  <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 n.5 (1987).

Civil No. 11-1861 (JAF)                                                                          -4-

1    Step three asks whether the claimant has an impairment or combination of

2    impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part

3    404, subpart P. § 404.1520(d).  If the claimant does not have an impairment equaling one of

4    those listed impairments, see id., the inquiry proceeds to step four.  At step four, the ALJ

5    first must determine the claimant's residual functional capacity ("RFC").  § 404.1520(e).

6    Next, the ALJ asks whether the claimant has the RFC to perform the requirements of his

7    past relevant work. § 404.1520(f).  If the claimant is able to perform his past work, he is not

8    considered disabled.  Id.

9         In this case, the ALJ found at step one that Claimant had not been engaged in

10   substantial gainful activity between Claimant's alleged disability onset date of August 1,

11   2003, through his last insured date of June 30, 2006.   (R. at 17.)  At step two, the ALJ

12   found that Claimant had the following severe impairments: Cervical myositis, chronic lower

13   back pain, status post laminectomy, discogenic disease at the L5-S1 level, major depressive

14   disorder with anxiety, and abuse of alcohol and cocaine.[1]  (R. at 17.)  At step three, the ALJ

15   found that Claimant did not have an impairment equaling one of the impairments listed in

16   20 C.F.R. Part 404, subpart P.  (R. at 20.)

---

[1] There was no evidence that Claimant used drugs or alcohol since 2004.  (R. at 19, 22.) The only physician who considered the effects of Claimant's past drug and alcohol abuse was the state agency's non-examining physician, Dr. Ramón Nevarez.  (R. at 379.)  Dr. Nevarez found that Claimant's past drug and alcohol use was not material to Claimant's impairments. (R. at 379.)

Civil No. 11-1861 (JAF)                                                          -5-

1          Proceeding to step four, the ALJ then found that on his last insured date,[2] Claimant

2    had an RFC that permitted him to perform sedentary work as defined in 20 C.F.R.

3    § 404.1567(a).   (R. at 21.)   The ALJ consulted the testimony of a vocational expert,

4    Dr. Héctor Puig.   The ALJ asked the vocational expert whether a person with Claimant's

5    characteristics was capable of performing his past work or any other jobs that existed in the

6    national economy.   The ALJ asked the vocational expert to answer based on the following

7    assumptions: The Claimant's "maximum functional – exertional capacity is sedentary, [his]

8    maximum mental capacity only allows him to perform simple and repetitive tasks.   He

9    cannot have any contact with the public and his maximum contact with supervisors and

10   coworkers is occasional." (R. at 473.)

11         The vocational expert testified that based on these limitations, Claimant could not

12   have returned to his past relevant work, but that he could perform four jobs that existed in

13   significant numbers in the national economy: Products classifier, products inspector,

14   products ticketer, and products packer.  (R. at 23, 471.)   Finding that there were other jobs

15   in the national economy that Claimant could have performed, the ALJ found Claimant not

16   disabled.

_____

[2] Based on the earnings posted in Claimant's record, he had to show that he was disabled on or before
June 30, 2006, when Claimant last met the Act's insured status requirement, as determined by 20 C.F.R.
§ 404.130–31. (R at 17.)

1                                               **III.**

2                                          **Analysis**

3          Claimant challenges the ALJ's determination that he was not disabled. (Docket

4    No. 9.)  Claimant's main argument is that the questions posed by the ALJ to the vocational

5    expert were not based on an accurate description of Claimant's limitations.  Under binding

6    First Circuit precedent, the questions an ALJ poses to a vocational expert must be clear and

7    accurate reflections of the relevant medical opinions.

8                    [I]n order for a vocational expert's answer to a hypothetical question
9                    to be relevant, the inputs into that hypothetical must correspond to
10                   conclusions that are supported by the outputs from the medical
11                   authorities. To guarantee that correspondence, the Administrative
12                   Law Judge must both clarify the outputs (deciding what testimony
13                   will be credited and resolving ambiguities), and accurately transmit
14                   the clarified output to the expert in the form of assumptions.
15
16   Arocho v. Sec'y of Health and Human Servs., 670 F.2d 374, 375 (1st Cir. 1981).

17         We agree that "[i]n this case, both clarification and transmission were inadequate."

18   Id. We remand on this basis.

19         The medical evidence that the ALJ apparently relied on for his RFC assessment was

20   performed by Dr. Luis Rodríguez, a state agency physician who examined Claimant's

21   records in February 2008.   (R. at 438.)  On page five of his decision, the ALJ stated that he

22   was adopting Dr. Rodríguez' RFC assessment.   (R. at 19.)   It was within the ALJ's

23   discretion to credit the state agency doctor's view over that of Claimant's treating physician,

24   Dr. Gaztambide.  See Lizotte v. Secretary, 654 F.2d 127, 131 (1st Cir. 1982) ("[I]t is clear

25   that it is within the Secretary's province to accord greater weight to the report of a medical

26   expert commissioned by the Secretary."). But even assuming that the ALJ was correct to

1   rely on Dr. Rodríguez' view, we do not think that the questions posed by the ALJ clearly or

2   accurately reflected the limitations found by Dr. Rodríguez.

3        For example, Dr. Rodríguez found that Claimant was moderately limited in the

4   following areas: The ability to maintain attention and concentration for extended periods;

5   the ability to perform activities within a schedule, maintain regular attendance, and be

6   punctual within customary tolerances; the ability to complete a normal workday and

7   workweek without interruptions from psychologically-based symptoms, and to perform at a

8   consistent pace without an unreasonable number and length of rest periods; the ability to

9   interact appropriately with the general public; and the ability to accept instructions and

10  respond appropriately to criticism from supervisors.  (R. at 438-439.)  Dr. Rodríguez then

11  elaborated that Claimant suffered from "depression associated with back pain; diminished

12  attention and short memory; can sustain attention for two hour[] intervals."

13       Compared with the various limitations provided in Dr. Rodríguez' RFC, the ALJ's

14  hypothetical to the vocational expert was very brief and incomplete.  The ALJ asked only

15  one question to the vocational expert.  (R. at 473.)  The ALJ asked the vocational expert to

16  assume someone whose "maximum functional – exertional capacity is sedentary, [his]

17  maximum mental capacity only allows him to perform simple and repetitive tasks.  He

18  cannot have any contact with the public and his maximum contact with supervisors and

19  coworkers is occasional." (R. at 473.)

20       Among other things, this hypothetical did not account for Claimant's limited ability

21  to maintain attention and concentration for extended periods; his limited ability to perform

22  activities within a schedule, maintain regular attendance, and be punctual within customary

23  tolerances; or his limited ability to complete a normal workday and workweek without

Civil No. 11-1861 (JAF)                                                        -8-

1   interruptions from psychologically-based symptoms, and to perform at a consistent pace

2   without an unreasonable number and length of rest periods.  The ALJ did not explain why

3   he chose to disregard those limitations, nor did he clarify how the relevant medical evidence

4   informed the hypothetical that he was posing.  Therefore, we agree with Claimant that the

5   ALJ did not do an adequate job of "clarify[ing] the outputs . . . and accurately transmit[ting]

6   the clarified outputs to the experts in terms of assumptions."  <u>Arocho</u>, 670 F.2d at 375.

7                                           **IV.**

8                                        **<u>Conclusion</u>**

9           For the foregoing reasons, the Claimant's motion is **GRANTED**.  This case is

10  **REMANDED** to the ALJ for further proceedings consistent with this opinion.  We note that

11  this remand is within sentence four of 42 U.S.C. § 405(g), pursuant to <u>Shalala v. Schaeffer</u>,

12  509 U.S. 292, 297 (1993).

13          **IT IS SO ORDERED.**

14          San Juan, Puerto Rico, this 4th day of March, 2013.

15                                        s/José Antonio Fusté
16                                        JOSE ANTONIO FUSTE
17                                        United States District Judge